IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**JAMES OLDFIELD,**

**Plaintiff,**

**v.**                                                                                      No. CV-10-558 WDS/ACT

**CLARENCE G. DAVIS, et. al.**

**Defendants**.

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT BASED ON DISCOVERY ABUSES**

**THIS MATTER** comes before the Court on Defendants' Motion For Summary Judgment Based On Discovery Abuses. [Doc. 69]  Plaintiff filed a Response [Doc. 75], and Defendants filed a Reply. [Doc. 76].  Being fully advised in the premises, the Court finds that the motion is well taken and will be GRANTED.

**BACKGROUND**

This lawsuit arises from a police pursuit, and subsequent arrest, of Plaintiff.  A drug task force was conducting surveillance of Plaintiff, who had outstanding warrants, was suspected of possessing dynamite, had possibly kidnapped an individual, was driving a stolen vehicle, and was believed to be a methamphetamine manufacturer and distributor.  The surveilling officers saw him driving erratically near 98th and Central Avenue in Albuquerque.  The undercover officers made the decision to call for a marked Albuquerque Police Department (APD) vehicle to stop Plaintiff.  The marked unit attempted to stop Plaintiff in a parking lot, and Plaintiff fled at a high rate of speed, pursued by both the marked and unmarked units.  Eventually the unmarked unit rammed Plaintiff's

vehicle, disabling it. According to Defendants, Plaintiff remained in the vehicle, refusing the officers' (one uniformed, the other in plain clothes) demands to get out of the vehicle. One of the officers wrestled Plaintiff out of the vehicle and onto the ground, where he resisted being handcuffed. As backup units arrived, approximately five or six officers wrestled with Plaintiff, attempting to handcuff him. Several of the officers administered rib strikes to Plaintiff in an attempt to compel compliance, specifically to release his hands from under his body so he could be handcuffed. Plaintiff was charged with receiving and transferring a stolen vehicle, aggravated fleeing, and two felony warrants.

Plaintiff alleges that after he was stopped by the Defendants they began questioning him with excessive use of force, such as punching, kicking him, striking him with fists, feet and batons, while repeatedly shouting and demanding answers to questions such as "Where is Huero?", "Where do you have him tied up?" "Where's the dynamite?" and other similar questions. Plaintiff alleges that he had no idea who "Huero" was or why he was being questioned about "Huero" or any dynamite. Plaintiff alleges that the physical beating by the Defendant officers was greatly in excess of the degree necessary to handcuff him, and resulted in a fractured left orbital bone, a broken nose, diminished vision in his left eye, cognitive damage, and emotional damage.

This lawsuit is brought by the Plaintiff for the violation of his civil rights under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983, and New Mexico common law tort. (negligence). The case was filed in New Mexico state court and removed to federal court. Defendants contend in this motion that Plaintiff's failure to disclose all of his medical providers and his medical conditions, failure to provide timely medical and mental health releases, perjurious testimony, and purposeful evasion of an IME on three separate occasions compel dismissal of Plaintiff's case with prejudice.

## ANALYSIS

A court reviewing a motion to dismiss with prejudice for discovery abuses should consider: (1) the degree of actual prejudice to the opposing party; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would likely be taken as a sanction for non-compliance; and, (5) the efficacy of lesser sanctions. *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920-21 (10th Cir. 1992) No one factor is determinative, what is required is a case-by-case analysis of the facts. *Id*.

**1. Degree of Actual Prejudice to the Opposing Party**

It is apparent from reviewing the Court docket and Defendants' moving papers that the Defendants' have focused discovery on the medical portion of this case, i.e., Plaintiff's alleged injuries resulting from the accident, his medical history, prior injuries, etc. Plaintiff's initial Rule 26 disclosures were incomplete and vague, and it was necessary for Defendants to file motions to compel the production of releases necessary to obtain Plaintiff's medical records, as well as releases necessary to depose Plaintiff's treating physicians at University of New Mexico Hospital, who Plaintiff appears to have designated as experts. The Court notes that Plaintiff contended in the Joint Status Report filed early in the case that he had sustained a broken nose and permanent damage to his left eye. At his deposition he stated that his left orbital bone had been fractured. Defendants have submitted medical records indicating there was no fracture of the orbital bone and no broken nose. Defendants were also able to obtain records of an eye examination conducted before the incident in question that found Plaintiff to be myopic, with 20/40 vision. Examinations subsequent to the incident reveal that Plaintiff's vision is the same, notwithstanding Plaintiff's testimony that he had lost 30% of the vision in his left eye. Again, there is no evidence before the Court that Plaintiff has produced an expert report sustaining his claim of loss of vision resulting from the

3

incident in question.

More troubling to the Court is the fact that Plaintiff has failed on at least three occasions to appear for an IME. The IME was scheduled to address Plaintiff's claims of neurological damage (primarily migraines and loss of memory) allegedly arising from the blows to his head. Such an examination is required in order for Defendants to present competent testimony in defense of Plaintiff's damage claims. Plaintiff neither appeared for the exam nor paid the non-appearance fee charged by the medical office. Evidence regarding Plaintiff's pre-incident and post-incident medical condition is in no way immaterial, to the contrary, it lies at the heart of Plaintiff's case. This element of the five part test weighs in Defendants' favor.

**2. Interference With the Judicial Process**

Defendants were originally to produce their expert reports by December 2, 2010, with discovery closing January 31, 2011. Defendants were required to file several motions extending both deadlines due to Plaintiff's failure to provide the medical releases discussed above, and failure to appear for his IME. Plaintiff's third no-show for his IME occurred in June of 2011. Plaintiff's unwillingness to comply with the Court's scheduling orders interferes with the judicial process.

Additionally, in his answers to interrogatories Plaintiff claimed to have received mental health treatment for his injuries at Southwest Counseling Services at Sierra Vista Hospital. Confronted at his deposition with the fact that neither institution had records of his purported treatment, Plaintiff admitted that he had not gone for treatment, but merely intended to.

On March 23, 2011 Plaintiff's first attorney moved to be relieved as counsel, citing Plaintiff's failure to pay for the litigation and his failure to communicate with counsel. On approximately the same date Plaintiff was released from incarceration with an ankle bracelet, confined to strict home arrest except for work. Plaintiff opposed his attorney's motion, and a

hearing was set for April 8, 2011 before the assigned magistrate judge. Plaintiff was notified of the hearing and was noticed to appear, but did not do so. Plaintiff's counsel advised the magistrate judge that he had tried to call Plaintiff but Plaintiff was not taking his calls. Defendants later found out that Plaintiff had been in Tucson on April 8, 2011 and was arrested on that date for being in violation of his conditions of release.

Defendants argue that additional instances of Plaintiff's failure to provide honest, complete answers in discovery have interfered with the judicial process. It is not the job of the Court to resolve legitimate disputes of fact in ruling on a motion such as this, but it is abundantly clear to the Court that the Plaintiff's testimony has been less than candid as evidenced by his own witnesses and evidence. For example, at his deposition Plaintiff denied a history of drug use and claimed to have no idea why the police were questioning him after his arrest about a person named "Huero." Plaintiff's medical records, however, include information he provided to prison doctors about his methamphetamine use for approximately two or three years before the incident. Plaintiff's wife was also deposed, and she testified that it was the arrest leading to this case, and Plaintiff's subsequent imprisonment, that stopped Plaintiff from using methamphetamine. Plaintiff's wife also testified that Plaintiff had come to Albuquerque from Truth or Consequences shortly before the incident specifically to look for their friend Huero. According to Plaintiff's wife, Plaintiff believed that Heuro had burglarized their house in Truth or Consequences. Further, although Plaintiff had not located Huero before his arrest, he had recovered his stolen property and had it in his hotel room in Albuquerque. This element of the five part test weighs in Defendants' favor.

**3. Culpability of the Litigant**

It is very clear to the Court that this is not a problem with Plaintiff's counsel, but with Plaintiff. Plaintiff attempts in part to excuse his behavior by claiming that his memory is impaired

5

as a result of being struck in the head. Plaintiff's alleged memory problems, however, work uniquely in his favor, i.e., Plaintiff forgets his medical history and past drug use but has no problem remembering his version of the pursuit and arrest and his version of his injuries. The Court notes that Plaintiff obtained a second attorney after the first attorney moved to be relieved. The second attorney has now moved for relief as counsel on the same grounds as the first, failure to pay and failure to stay in contact with counsel. Plaintiff, not his attorney, is responsible for his decision to skip the April 8, 2011 court hearing and violate his conditions of release by going to Tucson. Plaintiff is responsible for his non-appearance at his IMEs. This element of the five part test weighs in Defendants' favor.

**4. Prior Warning**

While the Court does not agree with Defendants that the Court order extending discovery and ordering Plaintiff to appear for his IME (Doc. 58) expressly warned Plaintiff that failure to appear for a third scheduled IME could result in dismissal of his case. The magistrate judge did, however, order Plaintiff to attend the June 1, 2011 IME, and Plaintiff ignored that order. In addition, Plaintiff's first attorney's motion to be relieved as counsel, in part for lack of cooperation, did put Plaintiff on notice that his lack of cooperation in prosecution of the case was unacceptable. The Court agrees with Defendants that a specific warning not to answer interrogatories or deposition questions dishonestly is not required. Plaintiff has extensive criminal court experience and is not a naive or inexperienced litigant. Furthermore, there is no indication that more explicit warnings would have had an effect on Plaintiff's behavior, given, for example, his willingness to violate his conditions of release and house arrest. Plaintiff's decision to go to Tucson rather than attend the hearing on his attorney's motion to be relieved did not merely risk potential dismissal of a civil case, but a return to jail. Despite the consequences, Plaintiff went to Tucson anyway. This element of

the five part test does not weigh in Plaintiff's favor.

### 5. Efficacy of Lesser Sanctions

It is apparent to the Court that the Plaintiff has no regard for the courts or court rules, whether on the civil or criminal side of the docket. The Court agrees with Defendants that permitting this lawsuit to proceed would be an open invitation to Plaintiff to continue abusing the judicial process. The Court agrees that when a litigant conceals truthful information, or offers false information and is caught, merely allowing the litigant to set the record straight is an insufficient sanction, since litigants would correctly conclude that they had everything to gain and nothing to lose by so manipulating the discovery process. This element of the five part test weighs in Defendants' favor.

In the Court's opinion, applying the five-part test, Plaintiff's obstruction of the discovery process in this case justifies its dismissal with prejudice due to the substantial prejudice resulting to Defendants as a result of Plaintiff's behavior. The Court is convinced that no lesser sanction would be sufficient. The Tenth Circuit has upheld dismissal as a sanction in less egregious cases. For instance, dismissal was upheld as a sanction for the plaintiff's failure to attend his scheduled deposition, even where the plaintiff had requested that the deposition be delayed so that he could attend a business meeting in New York in order to "save his business from bankruptcy." *Ehrenhaus v. Reynolds*, 965 F.2d 916, 919 (10th Cir. 1992). In *Archibeque*, the Tenth Circuit upheld dismissal as a sanction for the plaintiff's failure to disclose information about prior injuries, even though the plaintiff characterized her omissions as "a mere oversight." *Archibeque*, 70 F.3d at 1175. Because there is no meaningful way to neutralize the prejudice to Defendants as a result of Plaintiff's willful conduct, the Court finds that the harsh remedy of dismissal is appropriate.

## CONCLUSION

For the foregoing reasons, Defendants' Motion For Summary Judgment Based On Discovery Abuses [Doc. 69] is hereby GRANTED.

**IS IT SO ORDERED.**

_____
**W. DANIEL SCHNEIDER**
**UNITED STATES MAGISTRATE JUDGE**